**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SEAN McENTIRE, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) **CIVIL ACTION NO. 17 CV 5179** ) |
| TRIBUNE MEDIA COMPANY, BRUCE A. KARSH, CRAIG A. JACOBSON, PETER M. KERN, ROSS LEVINSOHN, PETER E. MURPHY, and LAURA R. WALKER, | ) **CLASS ACTION COMPLAINT** ) **FOR VIOLATION OF** ) **FEDERAL SECURITIES LAWS** ) ) **DEMAND FOR JURY TRIAL** ) |
| Defendants. | ) ) |

Plaintiff Sean McEntire ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public stockholders of Tribune Media Company ("Tribune" or the "Company") against the members of the Tribune Board of Directors (the "Board" or the "Individual Defendants") or their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rules 14a-9, 17 C.F.R. 240.14a-9, 17 C.F.R. § 244.100, and 17 C.F.R. § 229.1015(b)(4), arising out of their attempt to sell the Company to Sinclair Broadcast Group, Inc. ("Sinclair" or "Parent").

2.      On May 8, 2017, Sinclair and the Company announced they had entered into an Agreement and Plan of Merger dated May 8, 2017 ("Merger Agreement"), by which Sinclair, through a newly-created wholly owned subsidiary, will acquire all of the outstanding shares of Tribune in a cash and stock transaction in which Tribune's stockholders will receive $35.00 in

cash and 0.23 shares of Sinclair Class A common stock for each share of Tribune common stock (the "Proposed Transaction"). Based on the closing price of Sinclair common stock as of the announcement, this represented a total value of $43.50 per share of Tribune common stock.

3.     The Proposed Transaction has a total transaction value of approximately $3.9 billion and is expected to close as soon as the calendar fourth quarter of 2017.

4.     On June 30, 2017, Sinclair and Tribune caused the filing of the Registration Statement for the issuance of Sinclair common stock on Form S-4 (the "Registration Statement") with the SEC.  The Registration Statement is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding the process leading up to the Merger Agreement, as well as Tribune management's financial projections for Tribune and Sinclair, that were prepared by Company management and relied upon by Moelis & Company ("Moelis") and Guggenheim Securities ("Guggenheim"), the Company's financial advisors. The Registration Statement further materially misleads Tribune stockholders by omitting any GAAP reconciliation of the non-GAAP financial measures contained in the Company's projections.

5.     Without additional information the Registration Statement is materially misleading in violation of federal securities laws.

6.     By unanimously approving the Proposed Transaction and authorizing the issuance of the Registration Statement, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Registration Statement was materially false and/or misleading. The Registration Statement is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

7.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from conducting the stockholder vote on the Proposed Transaction unless and until the

material information discussed below is disclosed to Tribune's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

9.    Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) Tribune is incorporated in this District; and (ii) the corporate transactions, actions, and wrongs complained of herein, can only occur in this District.

## PARTIES AND RELEVANT NON-PARTIES

11.    Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Tribune.

12.    Tribune is a corporation organized and existing under the laws of the State of Delaware. It maintains principal executive offices at 435 North Michigan Avenue, Chicago, Illinois, 60611. Tribune common stock trades on the New York Stock Exchange under the ticker symbol "TRCO."

13.     Defendant Bruce A. Karsh ("Karsh") has served as a director of the Company since 2012 and as Chairman of the Board since 2013.

14.     Defendant Craig A. Jacobson ("Jacobson") has served as a director of the Company since 2012.

15.     Defendant Peter M. Kern ("Kern") has served as a director of the Company since 2016, and interim Chief Executive Officer since March 2017.

16.     Defendant Ross Levinsohn ("Levinsohn") has served as a director of the Company since 2012.

17.     Defendant Peter E. Murphy ("Murphy") has served as a director of the Company since 2012.

18.     Defendant Laura R. Walker ("Walker") has served as a director of the Company since July 14, 2014.

19.     Defendants referenced in ¶¶ 13 through 18 are collectively referred to as Individual Defendants and/or the Board.

20.     Relevant non-party Sinclair is a Maryland corporation. Sinclair maintains its corporate headquarters at 10706 Beaver Dam Road, Hunt Valley, Maryland, 21030. Sinclair common stock trades on the NASDAQ under the ticker symbol "SBGI."

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action on behalf of all persons and/or entities that own Tribune Class A common stock (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

22.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  The Merger Agreement states that, as of May 4, 2017, there were 86,919,319 shares of Class A Tribune common stock outstanding.  All members of the Class may be identified from records maintained by Sinclair or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

23.     Questions of law and fact are common to the Class, including (i) whether Defendants solicited stockholder approval of the Proposed Transaction through a materially false or misleading Registration Statement in violation of federal securities laws; (ii) whether Plaintiff and other Class members will suffer irreparable harm if securities laws violations are not remedied before the vote on the Proposed Transaction; and (iii) whether the Class entitled is to injunctive relief as a result of Defendants' wrongful conduct.

24.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

25.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

26.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## FURTHER SUBSTANTIVE ALLEGATIONS

### Company Background and the Proposed Transaction

27.     Tribune holds a portfolio of television and digital properties, including 42 owned or operated local television stations reaching approximately 50 million households and the cable network WGN America.   Tribune also owns and manages a large number of real estate properties across the United States and a significant interest in a variety of strategic investments, including CareerBuilder and Food Network.

28.      In a joint press release dated May 8, 2017, the Company and Sinclair announced that they had entered into the Merger Agreement the night before.

29.     The announcement read, in relevant part:

> May 8, 2017 — Sinclair Broadcast Group, Inc. (Nasdaq: SBGI) ("Sinclair") and Tribune Media Company (NYSE: TRCO) ("Tribune") today announced that they have entered into a definitive agreement under which Sinclair will acquire 100% of the issued and outstanding shares of Tribune for $43.50 per share, for an aggregate purchase price of approximately $3.9 billion, plus the assumption of approximately $2.7 billion in net debt.

> Under the terms of the agreement, Tribune stockholders will receive $35.00 in cash and 0.23 shares of Sinclair Class A common stock for each share of Tribune Class A common stock and Class B common stock they own. The total $43.50 per share consideration represents a premium of approximately 26% over Tribune's unaffected closing share price on February 28, 2017, the day prior to media speculation regarding a possible transaction; approximately 14% over Tribune's 30-day volume weighted average closing stock price; and approximately 8% over Tribune's closing share price on May 5, 2017, the last trading day prior to today's announcement.

> Tribune owns or operates 42 television stations in 33 markets, cable network WGN America, digital multicast network Antenna TV, minority stakes in the TV Food Network and CareerBuilder, and a variety of real estate assets. Tribune's stations, a list of which is available in Tribune's most recent Form 10-K filed on March 1, 2017, consist of 14 FOX, 12 CW, 6 CBS, 3 ABC, 2 NBC, 3 MyNetworkTV affiliates and 2 independent stations. The group includes stations in the top three DMAs in the country, seven in the top 10 and 34 in the top 50 DMAs.

"This is a transformational acquisition for Sinclair that will open up a myriad of opportunities for the company," commented Chris Ripley, President and CEO of Sinclair. "The Tribune stations are highly complementary to Sinclair's existing footprint and will create a leading nationwide media platform that includes our country's largest markets. The acquisition will enable Sinclair to build ATSC 3.0 (Next Generation Broadcast Platform) advanced services, scale emerging networks and national sales, and integrate content verticals. The acquisition will also create substantial synergistic value through operating efficiencies, revenue streams, programming strategies and digital platforms."

"This will be the largest acquisition in our company's history, and I want to thank everyone from the Sinclair team, as well as our advisors and bankers who made this possible," commented David Smith, Executive Chairman of Sinclair. "Television broadcasting is even more relevant today, especially when it comes to serving our local communities. Tribune's stations allow Sinclair to strengthen our commitment to serving local communities and to advance the Next Generation Broadcast Platform. This acquisition will be a turning point for Sinclair, allowing us to better serve our viewers and advertisers while creating value for our shareholders."

"Today's announcement is the culmination of an extensive strategic review, which has delivered significant value to our stockholders," said Peter Kern, Tribune's Chief Executive Officer. "Since we announced the strategic review 15 months ago, we have streamlined the business, monetized non-core assets, strengthened our balance sheet and returned more than $800 million to stockholders — all of which has resulted in a 50% increase in stockholder value. We are extremely proud to join Sinclair, and we're excited that Tribune stockholders and employees will have the opportunity to participate in the long-term growth of the combined company."

The transaction has been unanimously approved by the Boards of Directors of both companies and is anticipated to close and fund in the fourth quarter of 2017. Completion of the transaction is subject to approval by Tribune's stockholders, as well as customary closing conditions, including approval by the Federal Communications Commission ("FCC"), and antitrust clearance.

Sinclair expects to fund the purchase price at closing through a combination of cash on hand, fully committed debt financing to be provided by JPMorgan Chase Bank, N.A., Royal Bank of Canada, Deutsche Bank AG New York Branch and Deutsche Bank Securities Inc. and by accessing the capital markets.

In order to comply with FCC ownership requirements and antitrust regulations, Sinclair may sell certain stations in markets where it currently owns stations. Such divestitures will be determined through the regulatory approval process.

Including the Tribune acquisition (before any related divestitures), all previously announced pending transactions, and pro forma for expected synergies, Sinclair's 2015 and 2016 media revenues would have been $4.070 billion and $4.603 billion, respectively. The $6.6 billion enterprise value represents an average pro forma EBITDA multiple of less than 7.0x on the core television and entertainment business and is expected to add over 40% pro forma 2016/2017 free cash flow per share accretion.

***The Materially Misleading and Incomplete Registration Statement***

30.     Defendants have failed to provide stockholders with material information necessary for an informed vote on the Proposed Transaction.   The Registration Statement, which recommends that the Company's stockholders vote in favor of the Proposed Transaction, misrepresents and/or omits material information in violation of Sections 14(a) and 20(a) of the Exchange Act.

>   ***Misleading Statements and Omissions Regarding the***
>   ***Financial Projections of the Companies***

31.     The Registration Statement fails to provide material information concerning the Company's financial projections and the financial forecasts for Sinclair provided to the Board, Moelis, and Guggenheim.

32.     The Registration Statement discloses "Certain Unaudited Financial Forecasts" that the Company provided to the Board and Goldman during the process leading up to the execution of the Merger Agreement.

33.     The Registration Statement only provides projections of the Company's financial future for five metrics: Revenue, Adjusted EBITDA, EBIT, Cash Distributions, and the Unlevered Free Cash Flows calculated by Moelis and Guggenheim Securities.   However, the Registration Statement fails to provide the required line item metrics used to calculate the non-GAAP measures of Adjusted EBITDA, EBIT, and Unlevered Free Cash Flow.   The omission of such projections

renders the non-GAAP projections included in the Registration Statement materially incomplete and therefore misleading.

34.     When a company discloses information in a proxy that includes non-GAAP financial metrics, the Company must also disclose comparable GAAP metrics and a quantitative reconciliation of forward-looking information.  17 C.F.R. § 244.100.

35.     Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial metrics in communications with stockholders.  Recently, former SEC Chairwoman Mary Jo White stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Sinclair has included in the Registration Statement), implicates the centerpiece of the SEC's disclosure regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors.  And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

---

[1]     Mary Jo White, Chairwoman, SEC, Keynote Address at the International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

Further, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[2] In fact, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial metrics that demonstrate the SEC is indeed tightening policy.[3] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide *any* reconciling metrics that are available without unreasonable efforts.

36.     Thus, the above-referenced line-item projections that have been omitted from the Registration Statement are precisely the types of "reconciling metrics" that the SEC has recently indicated should be disclosed to render non-GAAP financial projections not misleading to shareholders. Defendants must disclose the following line items used to calculate the non-GAAP financial measures for Tribune: (i) income; (ii) investment transactions; (iii) income taxes; (iv) interest and dividend income; (v) interest expense; (vi) pension expense; (vii) equity income; (viii) depreciation and amortization; (ix) stock-based compensation; (x) certain special items (including severance), (xi) non-operating items; (xii) gain (loss) on sales of real estate; (xiii) impairments; (xiv) other non-cash charges and reorganization items; (xv) capital expenditures; (xvi) increases in net working capital; and (xvii) cash rights payments.

---

[2]     *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. TIMES, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[3]     *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, SEC (May 17, 2016), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

37.     Furthermore, the Registration Statement also discloses that both Moelis and Guggenheim performed discounted cash flow analyses of Sinclair using forecasts of Sinclair's unlevered free cash flows provided by Sinclair management.

38.     However, the Registration Statement fails to disclose these projections of Sinclair's unlevered free cash flows, despite the analysis performed by both of the Company's financial advisors regarding the value of the stock portion of stockholder compensation.

39.     The omission of Sinclair's financial projections renders the Registration Agreement so incomplete as to materially mislead Tribune stockholders regarding the analysis of the value of stockholder consideration performed by Tribune's financial advisors in order to support opinions on the fairness of such consideration.

### The Value of Bidder C's Indication of Interest

40.     On page 61, the Registration Statement discloses that a party, Bidder C, had submitted an indication of interest in purchasing all or part of Tribune, including at least four of the Company's stations. Unlike the disclosures related to the indications of interest from a Bidder B and Sinclair, however, the Registration Statement omits the value of this indication of interest.

41.     The failure to disclose the value of Bidder C's indication of interest is a material omission that materially misleads Tribune stockholders. By selectively disclosing the valuations attributed to the Company and its assets by potential bidders, Defendants have materially misled Tribune stockholders as to the market value of their shares and the Company's assets, as well as the impartiality of the process followed by the Tribune Board.

### The Existence of Standstill and/or Don't-Ask-Don't-Waive Provisions

42.     The Registration Statement states that the Company entered into at least eleven confidentiality agreements with potential acquisition partners, including with Sinclair, Bidder B,

and Bidder C. Descriptions concerning the material terms of these confidentiality agreements, however, are absent from the Registration Statement, including whether or not these confidentiality agreements contained standstill provisions, and if so, whether the standstill provisions had "don't-ask-don't-waive" provisions and/or sunset provisions, or whether the counterparties could seek a waiver of such standstills to make an unsolicited offer to acquire the Company.

43. If these confidentiality agreements entered into with other parties contained standstill provisions, these parties are likely prohibited from coming forward with a topping bid.

44. The omission of the details regarding these confidentiality agreements in the Registration Agreement renders it materially misleading because it gives the impression that the confidentiality agreement counterparties who had entered into negotiations with the Company prior to its signing of the Merger Agreement have the ability to come forward with a topping bid, when they may, in fact, be contractually prohibited from doing so. Thus, the omission of this information renders all references to the confidentiality agreements in the Registration Agreement materially false and misleading

45. Defendants' failure to provide Sinclair stockholders with the foregoing material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder. The Individual Defendants were aware of their duty to disclose this information. The material information described above that was omitted from the Registration Statement takes on actual significance in the minds of Sinclair stockholders in reaching their decision whether to vote in favor of the Proposed Transaction. Absent disclosure of this material information prior to the vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make an informed decision about whether to vote in favor of the Proposed

Transaction and are thus threatened with irreparable harm for which damages are not an adequate remedy.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act
and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder**

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.

48.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

49.     Specifically, the Registration Statement violates Section 14(a) and Rule 14a-9 because it is materially misleading and omits material facts, as set forth above.  Moreover, in the exercise of reasonable care, Defendants should have known that the Registration Statement is materially misleading and omitted material facts that are necessary to render the statements that are made non-misleading.

50.     All of the relevant information concerning the Company's financial projections was readily available to all Defendants at all relevant times.  The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, or were grossly negligent in failing to know.

51. The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their right to cast a properly informed vote on the Proposed Transaction.

52. Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

53. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54. The Individual Defendants acted as controlling persons of Sinclair within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Sinclair, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act

violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Registration Statement.

57. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

60. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)    declaring this action to be a class action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B)    declaring that the Registration Statement is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(C)    preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

(D)    to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff and the members of the Class rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

(E)    awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

(F)    awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, and any appropriate state law remedies; and

(G)    granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

16

Dated: July 13, 2017        **DITOMMASO LUBIN AUSTERMUEHLE, P.C.**

By:    */s/* Vince L. DiTommaso

**OF COUNSEL:**

                       Vincent L. DiTommaso
                       Peter S. Lubin

**LEVI & KORSINSKY, LLP**           Andrew C. Murphy
Donald J. Enright                 17W 220 22nd Street, Suite 410
Elizabeth K. Tripodi              Oakbrook Terrace, IL 60181
1101 30th Street, N.W.,           (630) 333-0000 Telephone
Suite 115                          vdt@ditommasolaw.com
Washington, DC 20007          psl@ditommasolaw.com
(202) 524-4290                    acm@ditommasolaw.com

*Counsel for Plaintiff*             *Attorneys for Plaintiff*